**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X
In re: Ravi Subramanian and
    Rajalakshmi Subramanian,                    Chapter 7
                                                     Case No. 04-10510 (RTL)

          Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - -X
Barry W. Frost, Chapter 7 Trustee
and HSBC Bank USA, NA as successor
by merger to HSBC Bank USA, for itself
and as collateral agent for Bank of Baroda,

          Plaintiffs,

          v.                                   Adv. Proc. No: 04-02685

Ravi Subramanian and
    Rajalakshmi Subramanian,

          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

**APPEARANCES:**

**John F. Bracaglia, Jr., Esq.**
Cohn, Bracaglia & Gropper
Attorneys for Debtors/Defendants

**Brian W. Hofmeister, Esq.**
Teich Groh
Attorneys for Co-Plaintiff, Barry W. Frost, Chapter 7 Trustee

**John R. Altieri, Esq.**
Law Office of John R. Altieri
    and
**David M. Banker, Esq.**
Phillips Lytle LLP
Attorneys for HSBC Bank USA as successor by merger
  To HSBC Bank USA, for itself and as collateral agent

For Bank of Baroda

**RAYMOND T. LYONS, U.S.B.J.**

Debtors moved to vacate a default judgment that denied them a discharge. Because they have not presented a meritorious defense to each count of the complaint, Debtors' motion is denied.

**JURISDICTION**

This court has jurisdiction under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) and (J) to determine dischargeability of a particular debt and objections to discharge.

**STATEMENT OF THE FACTS**

Ravi Subramanian and his wife, Rajalakshmi Subramanian, ("Debtors") filed their chapter 7 bankruptcy when the were unable to satisfy personal guarantees made by Ravi Subramanian in connection with his company, Silverline Technologies Limited ("STL"), STL's "dot-com" acquisition, Seranova, Inc. ("Seranova"), and STL's subsidiary corporation, Silverline Technologies, Inc. ("STI").[1] Like many dot com companies that originally flourished, Seranova's shares dropped drastically costing the company millions of dollars, eventually putting Seranova and STI into bankruptcy. With STI in default on its corporate loans, various creditors pursued the Debtors to enforce the personal guarantees.

One such unpaid guarantee belongs to HSBC Bank USA, National Association ("HSBC"). HSBC

---

[1] Debtors previously filed a bankruptcy petition under Chapter 7 on October 28, 2003. This case was dismissed as Debtors failed to file the required documents.

obtained a judgment against Ravi Subramanian, STL, STI, and Seranova in an amount exceeding $18,000,000.00, which remains outstanding. Unable to pay the millions owed on the judgment, Debtors found themselves in personal bankruptcy on January 6, 2004.

On September 28, 2004, the Trustee and HSBC, as co-Plaintiffs, filed a complaint objecting to discharge under 11 U.S.C. § 727 or determining dischargeability of HSBC's debt under 11 U.S.C. § 523. The allegations include:

- knowingly and fraudulently making false statements on their bankruptcy schedules, during their depositions and other hearings, and during the pre-bankruptcy enforcement efforts with regards to the judgment;

- concealing, destroying or failing to keep various records of their financial condition and business transactions;

- failing to adequately account for the estate's assets;

- failing to obey a turnover order issued for their motor vehicle, despite being held in contempt of court.[2]

---

[2] More specifically, on July 23, 2004, the Trustee filed a motion to compel the turnover of a vehicle after the Debtors failed to heed the Trustee's request and demand that the 1999 BMW motor vehicle be relinquished to the Trustee as its value exceed the claimed exemption. Instead, by a facsimile received July 31, 2004, Debtors offered to pay $7,000.00 for the vehicle. On August 2, 2004, Trustee responded with a request for valuation of the vehicle to assess the proposed offer. Having received no response, on August 18, 2004, Trustee again asked Debtors for appropriate documentation and payment, or alternatively, turnover of the vehicle. In the interim, the Court entered an Order on August 17, 2004, compelling turnover of the vehicle to Trustee within twenty-four hours. Such order was served on Debtors and Debtors' counsel on August 23, 2004. Rather than turning over the vehicle, the Debtors sent a letter on October 4, 2004, renewing their offer to purchase the vehicle for $7,000.00. In response, by letter dated October 19, 2004, Trustee stated he would accepted net payment in the amount of $7,500.00 for the vehicle. However, the letter did not purport to relieve Debtors of their

A summons was issued by the clerk on October 1, 2004, requiring an answer in 30 days . Plaintiff served the summons and complaint by mail on the Debtors and their attorney on October 1, 2004, pursuant to Fed. R. Bankr. P. 7004(b)(9). Without having requested additional time to file an answer, Debtors' tardily filed an answer on November 3, 2004.

A determination on the merits of the allegations was not reached as no answer was filed by the Debtors as of the October 31, 2004 deadline. Instead, default was requested on November 3, 2004, and entered on November 4, 2004. Plaintiff served copies of the request for entry of default on both Debtors and Debtors' counsel. No motion was made to vacate the default. On December 6, 2004, Plaintiff's filed a motion for entry of default judgment and served the same on Debtors and their attorney. With no response from the Debtors, the court entered judgment on January 11, 2005, barring Debtor's discharge.

Subsequently, on January 27, Debtors filed a motion to vacate the default judgment. This motion, prepared by Debtor's former counsel, was unsupported by a memorandum of law or any factual statement by the Debtor. By order dated April 13, 2005, the motion was denied without prejudice and Debtor's former counsel was relieved *sua sponte* by the court. By way of new counsel, Debtors again seek to vacate the default and default judgment and ask the court to accept their late filing.

## DISCUSSION

---

obligation to turnover the vehicle pursuant to the previous court order. On November 5, 2004, Debtors provided the Trustee with a check for the first installment to purchase the vehicle. As the vehicle had still not been turned over, on November 8, 2004, the Court entered an order holding the Debtors in contempt. On November 10, 2004, the Trustee declined the Debtors' offer to purchase as Debtors had violated the turnover and contempt orders. On November 29, 2004, the Debtors came into compliance with the turnover and contempt orders by delivering the vehicle to the Trustee.

4

Entry of a default judgment prohibits a party from having a case decided on its merits. In the Third Circuit, courts have disfavored default judgments preferring instead that "any doubt as to whether a default judgment should be vacated must be resolved in favor of setting aside the default and reaching a decision on the merits." *In re Massaro*, 235 B.R. 757, 762 (Bankr.D.N.J. 1999), citing *Zawadski De Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987); *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983).

Once a default judgment has been entered, the court may set aside the judgment pursuant to Fed.R.Civ.P. 60(b)(1), as adopted by Rule 9024 of the Federal Rules of Bankruptcy Procedure, on a showing of "mistake, inadvertence, surprise, or excusable neglect," if a motion is made within a reasonable time and in no event more one year from entry of the judgment. Under Rule 60(b)(6) there is no one year time limit and judgment may be vacated for "any other reason justifying relief." Resort cannot be had to subsection (6) however if relief could have been sought under subsection (1) if not for expiration of the one year period. These two provisions are mutually exclusive, "and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than one year after the judgment by resorting to subsection (6)." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In other words, "a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." *Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986), citing *Hall v. Alabama*, 700 F.2d 1333, 1338 (11th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983); *Gulf Coast Bldg. & Supply Co. v. Int'l Bhd. of Elec. Workers*, 460 F.2d 105, 108 (5th Cir. 1972). In determining which subsections are applicable, the United States Supreme Court has stated that "[i]f a party is partly to blame

5

for the delay, relief must be sought within one year under subsection (1)." *Pioneer*, 507 U.S. at 393, 113 S.Ct. 1489.  Alternatively, if relief is to be sought under subsection (6), "a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Id*. at 393, 113 S.Ct. 1489.

Debtors filed their motion to vacate the default judgment requesting relief under Rule 60(b)(1), and alternatively under Rule 60(b)(6).  Pursuant to Rule 60(b)(1), Debtors argue their failure to timely file is the result of "excusable neglect" and therefore they are entitled to relief.  In the alternative, Debtors argue for relief under Rule 60(b)(6) stating their former attorney's conduct in filing late amounts to an "exceptional circumstance" that warrants relief.

The court entered a default judgment against the Debtors on January 11, 2005.  Debtors subsequently filed their original motion to vacate the default judgment on January 27, 2005, which was denied without prejudice on April 13, 2005.  The current motion to vacate the default judgment was filed on May 25, 2005.  This filing is within the one year time limit and therefore Debtors can seek relief based on an argument of excusable neglect if their delay is filing was reasonable in accordance with Rule 60(b)(1). Both the Debtors' original motion to vacate and the current motion to vacate were filed in a reasonable time from entry of the default judgment and the denial of that motion without prejudice, respectively.  Therefore, Debtors can seek relief under Rule 60(b)(1).

Debtors have not alleged improper service of process; they received notice of the proceedings and filing dates separate and apart from the notices received by their attorney and therefore are not blameless for the late filing.  Consequently, they cannot seek relief under Rule 60(b)(6).  Further, in determining the existence of excusable neglect, the court must consider whether the neglect of the respondents and their counsel was excusable.  *Pioneer*, 507 U.S. at 396, 113 S.Ct. 1489.  Since attorney conduct is considered

under Rule 60(b)(1) as part of the excusable neglect analysis, it is not a separate grounds and therefore cannot also be considered under Rule 60(b)(6). Only if the conduct of an attorney is so grossly negligent that it cannot be imputed to the client, will it fall outside of the excusable neglect analysis and instead the exceptional circumstances provision of Rule 60(b)(6) will apply. *Carter v. Albert Einstein Med. Ctr*, 804 F.2d 805, 807 (3d Cir. 1986); citing *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d. 976 (3d Cir. 1978).

When a motion is made to vacate a default or default judgment under Rule 60(b)(1) it is well-established in the Third Circuit that the determination is made based on the following three factors: (1) whether vacating the judgment will result in prejudice to the plaintiff; (2) whether defendant can provide a meritorious defense to the underlying action; and (3) whether the default resulted from culpable conduct on the part of the defendant. *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984); *In re Massaro*, 235 B.R. at 761.

The first and third factors relied on by the Third Circuit to determine whether excusable neglect exists under Rule 60(b)(1) are similar to the factors articulated by the Supreme Court in *Pioneer*. 507 U.S. 380, 113 S.Ct. 1489; see also *In re USN Communications, Inc.*, 288 B.R. 391, 395 (Bankr.D.Del. 2003). Indeed, the "excusable neglect" standard for late filings is not unique to Rule 60(b)(1). It is a standard used elsewhere in the Federal Rules of Civil Procedure, including Rule 6(b) and the corresponding Bankruptcy Rule 9006(b). It was in the context of its consideration of Fed.R.Civ.P. 6(b) and Bank.R. 9006(b) that the United States Supreme Court defined and applied the "excusable neglect" standard. *Pioneer*, 507 U.S. 380, 113 S.Ct. 1489. The Supreme Court, in *Pioneer*, referred to each rule that uses the phrase "excusable neglect" in guiding its definition of the term. As other courts have noted, *Pioneer*

"is commonly understood to provide guidance not just with regard to Rule 9006, but in other bankruptcy and non-bankruptcy contexts discussing the issue of excusable neglect." *In re O'Brien Envt'l Energy, Inc.*, 188 F.3d 116, 126 (3d Cir. 1999).

The Third Circuit has previously stated that the second factor, whether there is a meritorious defense to the underlying action, is a threshold question. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). Resolving this question first is critical "because without a meritorious defense [defendant] could not win at trial. Therefore, there would be no point in setting aside the default judgment...if [defendant] could not demonstrate the possibility of his winning." *U.S. Currency*, 728 F.2d at 195.

**MERITORIOUS DEFENSE**

A meritorious defense is established by showing the "allegations of defendant's answer, if established on trial, would constitute a *complete* defense." (emphasis added) *U.S. Currency*, 728 F.2d at 195, quoting *Tozer v. Charles A Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). A complete defense requires the debtor to respond to all allegations of a complaint. *In re Schraiber*, 117 B.R. 925, 932 (Bankr.N.D.Ill. 1990) ("[t]he consequence of [debtor's] failure to raise a defense to any of the several discharge counts of the Complaint is fatal to his discharge...[Debtor's] failure to plead a meritorious defense to [certain counts] of the Complaint is grounds for the denial of his Motion"). Further, a default judgment cannot be set aside if it is "based on conclusory statements or a recitation of the relevant statutory language." *USN Communications, Inc.*, 288 B.R. at 396; see also *U.S. Currency*, 728 F.2d at 196. Instead, the Third Circuit "imposed a more stringent standard which requires that a defendant set forth with some specificity the grounds for his defense." *Harad v. Aetna Casualty & Surety Co.*, 839 F.2d 979

(3d Cir. 1988).

The Third Circuit has found the existence of a meritorious defense when a defendant's answer alleged "specific facts beyond the general denial which provided the court with a basis to determine whether defendant could make out a complete defense." *U.S. Currency*, 728 F.2d at 195. Conversely, "[a] bald allegation that the moving party has a meritorious defense, without the support of facts underlying the defense, will not sustain the burden of the defaulting party under Rule 60(b)." *In re Penn Screw & Machine Works, Inc.*, 48 B.R. 138, 140 (Bankr.E.D.Pa. 1985), citing *Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir. 1970).

Failure of a debtor to respond to substantive allegations in a complaint cause "those allegations to be confessed as against him." *In re Schraiber*, 117 B.R. at 932, citing *Mahanor v. United States*, 192 F.2d 873, 876 (1st Cir. 1951); Bankruptcy Rule 7008; Fed.Rule Civ.Pro. 8(d). A debtor's "failure to raise a defense to any of the several discharge counts of the Complaint is fatal to his discharge." *In re Schraiber*, 117 B.R. at 932. Here, Debtors failed to provide a response to nine counts of the complaint.

More specifically, counts 5, 7, 12, 13, 16, 22, 23, 23(sic), and 26, went unanswered in whole or in part. The fifth count of the complaint alleged Debtors failed to explain the loss of $20,000.00 after being questioned during a Rule 2004 hearing, and subsequently failed to provide records regarding this money. Debtors' answer does not address this count. The seventh count contained three allegations regarding Mr. and Mrs. Subramanian's relationship with the company Ecomserver, only two of which were addressed in Debtors' answer. In response to the third allegation of the seventh count, Debtor's failed to explain Mrs. Subramanian's receipt of money from Ecomserver for personal expenses, in particular, a check from Ecomserver to Mrs. Subramanian that stated "House Rent- Feb." The twelfth count of the complaint

9

alleged the Debtors' lied under oath, concealing the existence of a second life insurance policy, and failed to provide documents regarding their insurance policies. Debtors made no response to this allegation. The thirteenth count contains an allegation that Mr. Subramanian lied under oath as evidenced in a discrepancy between the Rule 2004 exam and a previous deposition regarding questions on STI's corporate accounts receivable. Debtors provided no answer to this count. Debtors also failed to respond to count sixteen, in which it is alleged Mr. Subramanian lied under oath as he denied Uday Shankar Balakrishan was an employee of STI when bank records exist to show the contrary. As to the twenty-second count for relief, Debtors only addressed their failure to obey the court order to turnover their vehicle, but failed to address the claim of a fraudulent conveyance with regard to the same vehicle. The twenty-third claim for relief alleges Mr. Subramanian, an insider, as President and CEO of STI, failed to include Expo 24-7, a subsidiary, on STI's bankruptcy schedule with the intent to hinder, delay, and defraud creditors; additionally, Mr. Subramanian did not explain the loss of the Expo 24-7 interests as an asset of the STI bankruptcy case. Debtors' answer does not challenge these allegations. The subsequent count, numbered twenty-three as well, alleges both that Mr. Subramanian failed to include Unified Herbal Ltd. on the bankruptcy schedules for the STI bankruptcy and that he made false statements with the intent to hinder HSBC when he claimed STI would collect on an invoice for work done for Unified Herbal. Debtors did respond to their failure to list Unified Herbal on STI's bankruptcy petition stating simply that Unified Herbal was "worthless" and therefore not included. However, Debtors made no response to the allegation that Mr. Subramanian made false statements to HSBC with regards to the Unified Herbal invoice. Finally, several allegations made in count twenty-six have also gone unanswered by the Debtors. Count twenty-six alleges Mr. Subramanian made statements to HSBC with the intent to deceive when he represented the

amount of STI's receivables was significantly higher than the true amount. As an insider of STI, Mr. Subramanian executed several documents with HSBC significantly overstating the company's amounts receivable and submitted borrowing base certificates he knew to be uncollectible. Mr. Subramanian failed to explain the discrepancies in the amounts he provided as compared to the actual amounts, or, if these were true representations, has failed to explain the drastic loss in value of the STI receivables.

Plaintiffs have alleged facts sufficient to satisfy various subsections of § 727 of the Bankruptcy Code that allows a court to deny a debtor's discharge for certain improprieties. In particular, Plaintiffs allege facts that would result in a denial of discharge under § 727(a)(2),(3),(4), and (5). As set forth in these sections, a debtor's discharge can be denied for making statements and representations with the intent to hinder, delay, or defraud in the course of a bankruptcy case and for failing to satisfactorily explain the loss of assets. Additionally, a court may infer fraud, sufficient to warrant denial of a discharge, from a series or pattern of errors or omissions that cumulatively give rise to an inference of an intent to deceive. The allegations of the complaint, if taken as true, are grounds for denial under § 727. The Debtors' failure to respond to these allegations have the effect of causing the allegations to be confessed against the debtor. As such, Debtors would not be able to receive a discharge in bankruptcy and, therefore, Debtors have no meritorious defense to the underlying complaint nor the objection to discharge of Debtors.

As Debtors could not satisfy the threshold requirement of setting forth a meritorious defense, this court need not address the remaining elements necessary to vacate a default and default judgment.

## CONCLUSION

Since the Debtors have failed to allege facts supporting a meritorious defense to each count of the complaint, the Debtors' motion to vacate the default and default judgment, entered by this court on January 11, 2005, is denied.


Dated: September 13, 2005              /S/ **_Raymond T. Lyons_**
                                        RAYMOND T. LYONS
                                        United States Bankruptcy Judge